UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                          Case No. 3:16-bk-331-PMG

Thomas A. Cascio
Linda L. Steigman,

_____ Debtor.                               Chapter 7


Frances R. Bernacchi,

                        Plaintiff,

vs.                                                             Adv. No. 3:16-ap-108-PMG


Thomas A. Cascio
Linda L. Steigman,

_____ Defendants.


**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND MEMORANDUM OPINION**

**THIS CASE** came before the Court for a final evidentiary hearing in this adversary proceeding.

The Plaintiff objects to the dischargeability of a debt allegedly owed to her by the Debtor pursuant to §523(a)(2)(A) of the Bankruptcy Code. For the alleged debt to be nondischargeable under §523(a)(2)(A), the Plaintiff must establish the traditional elements of common law fraud by a preponderance of the evidence.

1

The Plaintiff and the Debtor were involved in a personal relationship between 2011 and 2014. In this proceeding, the Plaintiff asserts that she contributed the approximate sum of $190,000.00 for a home that she and the Debtor had agreed to purchase together during the relationship. According to the Plaintiff, however, the Debtor acquired the home solely in his name and did not thereafter repay her for her share of the contributions.

The parties' testimony at trial does not establish that the Debtor fraudulently represented that he would share the cost and ownership of the home, or that the Plaintiff justifiably relied on any such representations by the Debtor. Accordingly, the preponderance of the evidence in this case does not establish the elements of common law fraud, and the Plaintiff's claim is not excepted from the Debtor's discharge under §523(a)(2)(A) of the Bankruptcy Code.

## Background

The Plaintiff, Frances R. Bernacchi, was 65 years old at the time of trial. She had worked in real estate for a number of years, and received the sum of $225,000.00 from her husband's life insurance policies following his death in 2010.

The Debtor, Thomas A. Cascio, is retired from a 26-year career as a detective with the prosecutor's office in New Jersey.

The Plaintiff and the Debtor met through an on-line date site in November of 2011, and the Debtor moved into the Plaintiff's home in February of 2012.

The parties thereafter began looking for a different home to purchase and reside in together, and ultimately decided to construct a new home at a location in Ormond Beach, Florida.

The Plaintiff and the Debtor verbally agreed that both parties would share equally in the costs and ownership of the home. According to the Debtor, for example, he and the Plaintiff verbally agreed that they would split the costs and own the home "50/50."

And according to the Plaintiff, she and the Debtor verbally agreed that she would pay the initial construction deposits, and the Debtor would obtain a mortgage and make the mortgage payments until their contributions were equal. The parties originally contemplated a "conventional mortgage" in both parties' names, with the Debtor as the primary borrower because of the Plaintiff's poor credit history.

A contract with the builder was signed, and construction of the home occurred in 2012 and 2013.

The Plaintiff testified that she made significant disbursements for the home during the construction period, including an initial deposit in the amount of $10,000.00, a second deposit in the amount of $65,000.00, and a series of payments to the Design Center in the total amount of $52,000.00 for items such as carpet, tile, and appliances.

In the summer of 2013, the Debtor, as the sole borrower, obtained a VA mortgage to finance the balance of the home's purchase price. According to the Debtor, he chose the VA mortgage rather than a "conventional mortgage" because he was able to get a lower interest rate, lower monthly payments, and a refund of a portion of the down payment.

The Plaintiff testified that she was informed prior to the loan's closing that she was not permitted to sign the mortgage documents as a party to the transaction because she and the Debtor were not married. The Plaintiff understood, however, that she could be added as a co-owner of the home one year after its purchase.

Construction of the home was completed, and the purchase closed on August 16, 2013. The Plaintiff was present at the closing and served as the Debtor's realtor. At closing, the Debtor received a deed to the home that was solely in his name.

The Plaintiff and the Debtor moved into the home in September of 2013. After they began residing together in the new home, the Debtor made the mortgage payment in the approximate amount of $2,200.00 to $2,400.00 per month, and also paid for the couple's groceries. The Plaintiff paid other home expenses, such as cable, water, telephone, lawn care, and homeowners' fees, from her income of $1,500.00 per month.

The Debtor moved out of the home on October 1, 2014, without transferring any interest in the home to the Plaintiff. Shortly after moving out, he filed a state court eviction action against the Plaintiff, and she vacated the home on December 13, 2014.

Within two weeks after the Plaintiff moved out, the Debtor returned to the home with Linda Steigman. He and Linda Steigman were married on February 14, 2015, and they filed a joint petition under Chapter 7 of the Bankruptcy Code on January 29, 2016.

The home is listed in the Debtor's bankruptcy case with a scheduled value of $450,000.00, and a scheduled mortgage in the amount of $420,107.46. The Debtor indicated in his initial statements that he intended to surrender the home, and the Chapter 7 Trustee has filed a Report of No Distribution in the case.

**Discussion**

In this proceeding, the Plaintiff objects to the dischargeability of a debt allegedly owed to her by the Debtor pursuant to §523(a)(2)(A) of the Bankruptcy Code. Specifically, the Plaintiff asserts in her Complaint that:

4

> [T]he fraud claimed by Movant relates to promises and facts surrounding the use of approximately $200,000 given by Movant to Debtor based upon his promises and assurances regarding purchase of a home for the parties to live in, in contemplation of marriage. For various reasons, the contract for purchase and mortgage were solely in Debtor's name although Movant put up the bulk of the funds with the promise that she would be later added. Inevitably, the relationship went sour and Movant was never added to anything regarding ownership of the home.

(Doc. 1, p. 2). Consequently, the Plaintiff asserts that the alleged debt is nondischargeable under §523(a)(2)(A) because the "Debtor defrauded her in that he took her money for his own benefit and never even tried to do what he promised." (Doc. 1, p. 2).

Section 523(a)(2)(A) of the Bankruptcy Code provides:

**11 USC §523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any <u>debt</u>—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, <u>to the extent obtained by</u>—

(A) <u>false pretenses, a false representation, or actual fraud</u>, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A)(Emphasis supplied). To prevail under §523(a)(2)(A), a creditor must establish the traditional elements of common law fraud. The elements are that: (1) the debtor made a false representation with the intent to deceive the creditor; (2) the creditor justifiably relied on the misrepresentation; and (3) the creditor suffered a loss as a result of the misrepresentation.

> The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor.

In re Shamar, 2012 WL 1569565, at 5 (Bankr. M.D. Fla.).

5

Additionally, all of the elements of common law fraud must be established by a preponderance of the evidence. "The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence." In re Shamar, 2012 WL 1569565, at 5. A plaintiff seeking to except a debt from the debtor's discharge under §523(a)(2)(A) "must prove their case by a preponderance of the evidence." In re Owens, 549 B.R. 337, 347 (Bankr. D. Md. 2016).

In this case, the preponderance of the evidence does not establish the elements of common law fraud, and the Plaintiff's claim is not excepted from the Debtor's discharge under §523(a)(2)(A) of the Bankruptcy Code.

The Plaintiff's claim centers on her contributions to the home that she and the Debtor had agreed to purchase together during their personal relationship. The Plaintiff testified, for example, that she paid an initial deposit in the amount of $10,000.00 and a second deposit in the amount of $65,000.00, and that she also made a series of payments to the Design Center for fixtures and items to be installed in the home during construction.

The Plaintiff testified at trial that she typed a Promissory Note to document the Debtor's promise to repay his share of her contributions to the home, that the Debtor signed the Note, and that she gave the Note to her therapist to hold for safekeeping. But the Promissory Note was not introduced or admitted at trial, and the terms of the Note are not in evidence.

The Plaintiff testified that she served as the Debtor's realtor in the purchase of the home, that she was entitled to a commission in the amount of $13,000.00 for the representation, and that she used the commission to purchase certain upgrades for the home.

6

In summary, the Plaintiff claims that she contributed more than $190,000.00 to the purchase of the home.

**The preponderance of the evidence does not establish that the Debtor made a false representation with the intent to deceive the Plaintiff.**

The parties' testimony at trial does not establish that the Debtor fraudulently represented that he would share the cost and ownership of the home.

Both parties testified that they verbally agreed to purchase a home together, and that the verbal agreement provided for them to share equally in the cost and ownership of the home. According to the Plaintiff, the Debtor defrauded her by acquiring the home in his own name, and by failing to repay his share of her contributions to the home's purchase price.

### 1. No misrepresentation of present fact

"False pretenses and false representation under §523(a)(2)(A) requires that 'the debtor made false representation of fact . . . .' Ojeda, 599 F.3d at 716. A false representation under §523(a)(2)(A) must relate to a present or past fact." In re Casali, 517 B.R. 835, 843 (Bankr. N.D. Ill. 2014)(Emphasis supplied).

In this case, the Plaintiff did not establish that the Debtor made any specific misrepresentation of a present or past fact in connection with their verbal agreement to purchase a home. She did not establish, for example, that the Debtor misstated his current financial condition, or that he misstated his legal capacity or availability to purchase the home.

Instead, the Plaintiff alleges in her Complaint that she made the contributions to the home based on the Debtor's "promises and assurances regarding purchase of a home for the parties to live in, in

contemplation of marriage," and upon the Debtor's "promise that she would be later added" as an owner of the home. (Doc. 1, ¶ 4).

The parties did live together in the home, however. Regarding marriage, the Plaintiff testified that she needed to wait to get married for four years for financial reasons.

### 2. Intent to perform a future act

If a representation relates to the debtor's intent to perform an act in the future, the representation will not be actionable under §523(a)(2)(A) unless the debtor lacked the subjective intent to perform the act at the time that the statement was made. In re Vega, 503 B.R. at 148(quoting In re Bucciarelli, 429 B.R. 372, 375 (Bankr. N.D. Ga. 2010)). For a representation regarding future performance to be actionable under §523(a)(2)(A), a debtor must lack the intent to perform the future act when the promise was made. In re Carlson, 2008 WL 8677441, at 3 (10th Cir. 2008)(quoted in In re Quarles, 2014 WL 29740, at 6).

In this case, the parties verbally agreed to purchase a home, and the Debtor agreed that the parties would share the cost of the home equally and own the home jointly. The evidence does not establish, however, that the Debtor lacked the intent to perform the agreement at the time that it was made.

### a. At the time of the construction contract

The evidence does not show that the Debtor lacked the intent to share the costs and ownership of the home at the time that the contract was entered with the builder.

The Plaintiff testified, for example, that the Debtor signed a Promissory Note to document his promise to repay his share of her contributions to the home. According to the Plaintiff, the Debtor signed the Note at her request while they were considering the purchase of the home and payment of the construction costs.

Additionally, it appears that the construction contract was signed in 2012. The contract is not in evidence, and the record does not establish who signed the contract or the circumstances surrounding its execution. Both parties testified, however, that the Debtor made a down payment of $35,000.00 to the builder at or about the time that the contract was signed.

In other words, the Debtor's conduct does not establish that he lacked the intent to share the costs and ownership of the home at the time that the construction contract was signed.

### b. At the time of the Plaintiff's contributions

Similarly, the evidence does not show that the Debtor lacked the intent to share the home's cost and ownership at the time that the Plaintiff made the contributions to the home.

According to the Plaintiff, she made the contributions in 2012 and 2013, while the home was under contract. During this period, the Plaintiff and the Debtor were living together, and the Plaintiff testified that their personal relationship was good or even "fabulous."

The Debtor testified that he thought he loved the Plaintiff, and there is no evidence that he was planning to leave the relationship in 2012 or 2013. See In re Quarles, 2014 WL 29740, at 7 (Bankr. D. Colo.)("The Court cannot make the inference that Debtor was scheming to defraud [the plaintiff] while in the midst of a happy relationship. [The plaintiff] has failed to produce any sort of written evidence or testimony to substantiate his claim that the relationship was all a ploy.").

Further, there is no evidence that the Debtor was engaged in a separate relationship with Linda Steigman, his current wife, at the time that the Plaintiff was making the contributions to the home in 2012 and 2013. The only evidence regarding the timing of the Debtor's relationship with Linda Steigman is that she moved into the home in December of 2014, and the Debtor's testimony that he knew her a couple of months before deciding to marry her. They were married in February of 2015.

In fact, the evidence indicates that the Debtor attempted to perform his verbal agreement to share the cost of the home in 2012 and 2013. The agreement provided for the Debtor to obtain financing for the purchase of the home, and to incur the mortgage debt as the primary borrower. The testimony indicates that the Debtor initially approached a bank to obtain the financing, that he later worked with a mortgage broker to find a lender, and that he ultimately signed a mortgage with the VA for a significant portion of the home's purchase price.

The Debtor's conduct does not establish that he lacked the intent to share the costs of the home at the time that the Plaintiff was making the contributions.

### c. At the time of closing

Finally, the evidence does not establish that the Debtor lacked the intent to share the cost and ownership of the home at the time that the purchase closed on August 16, 2013.

The closing documents are not in evidence, but the parties appear to agree that the deed to the home is solely in the Debtor's name. The Plaintiff indicated that she is not included on the deed because of a prohibition contained in certain VA regulations. According to the Debtor, he chose the VA mortgage rather than another type of mortgage because he was able to get a lower interest rate, a lower monthly payment, and a refund of a portion of the down payment.

The Plaintiff and the Debtor both testified that the Debtor received a refund of more than $30,000.00 at the closing, and that he applied a portion of the refund to the home. According to the Plaintiff, for example, the Debtor gave her approximately $34,000.00 of the amount that he received at closing, and she used the money to pay the interior decorator for the home.

After the closing, the Debtor made mortgage payments on the home in the approximate amount of $2,200.00 to $2,400.00 per month for an unknown period of time.

#### d. Generally

Additionally, statements of intent to perform an act in the future generally do not form the basis of a false representation under §523(a)(2)(A). In re Vega, 503 B.R. 144, 148 (Bankr. M.D. Fla. 2013). In Quarles, for example, as in this case, the debtor and the creditor had agreed to buy certain property together, the property was acquired only in the debtor's name, and the creditor claimed that the debtor promised to add the creditor to the title documents at a later time. The Court found that the creditor did not prove his claim under §523(a)(2)(A), because "a representation as to a future event generally cannot support a claim" for fraud under that section. In re Quarles, 2014 WL 29740, at 6(Bankr. D. Colo.)(quoting In re Jackson, 348 B.R. 595, 599 (Bankr. M.D. Ga. 2006)("The failure to perform a mere promise is not sufficient to make a debt nondischargeable [under §523(a)(2)(A)], even [if] there is no excuse for the subsequent breach.").

#### e. Conclusion

For these reasons, the preponderance of the evidence does not establish that the Debtor lacked the intent to perform his verbal agreement with the Plaintiff at the time that the agreement was made, at the time that the contact was signed with the builder, at the time that the Plaintiff made the contributions to the home, or at the time that the purchase closed.

**The preponderance of the evidence does not establish that the Plaintiff justifiably relied on any representations by the Debtor.**

Finally, the preponderance of the evidence does not establish that the Plaintiff justifiably relied on any representation by the Debtor regarding their verbal agreement to purchase a home.

The agreement provided for the parties to jointly purchase and own the home. In her Complaint, the Plaintiff alleges that she made the contributions to the home based on the Debtor's "promises and

11

assurances regarding purchase of a home for the parties to live in, in contemplation of marriage." (Doc. 1, ¶ 4). And at trial, the Plaintiff testified that she made the contributions in reliance on the Debtor's promise to marry her.

For purposes of §523(a)(2)(A), the Plaintiff's reliance on any representation by the Debtor regarding their future marriage was not justifiable. In re Bryant, 1997 WL 375692, at 7 (Bankr. M.D. Fla.)(The plaintiff did not justifiably rely on the debtor's promise of marriage.). See also In re Owens, 549 B.R. 337, 354 (Bankr. D. Md. 2016).

Further, the Plaintiff alleges that the Debtor promised to "quitclaim" to her a one-half interest in the home within a year after its purchase. The Plaintiff's reliance on the alleged verbal representation is not justifiable. In Florida, the statute of frauds provides that no action can be brought to enforce a contract for the sale of land unless the contract is in writing and signed by the party to be charged. Fla. Stat. §725.01. Under Florida law, a party cannot circumvent the statute of frauds by alleging that the owner "fraudulently promised to sell" the real property to the potential buyer. India America Trading Co., Inc. v. White, 896 So.2d 859, 860 (Fla. 3d DCA 2005).

In this case, the Plaintiff has worked in the real estate industry for a number of years, and served as the Debtor's realtor in the purchase.

The preponderance of the evidence does not establish that the Plaintiff justifiably relied on any representations by the Debtor regarding their verbal agreement to purchase a home.

**Conclusion**

The Plaintiff objects to the dischargeability of a debt allegedly owed to her by the Debtor pursuant to §523(a)(2)(A) of the Bankruptcy Code. For the alleged debt to be nondischargeable under §523(a)(2)(A), the Plaintiff must establish the traditional elements of common law fraud by a preponderance of the evidence.

The Plaintiff and the Debtor were involved in a personal relationship between 2011 and 2014. In this proceeding, the Plaintiff asserts that she contributed the approximate sum of $190,000.00 for a home that she and the Debtor had agreed to purchase together during the relationship. According to the Plaintiff, however, the Debtor acquired the home solely in his name and did not thereafter repay her for the contributions.

The testimony at trial does not establish that the Debtor fraudulently represented that he would share the cost and ownership of the home, or that the Plaintiff justifiably relied on any such representations by the Debtor. Accordingly, the preponderance of the evidence in this case does not establish the elements of common law fraud, and the Plaintiff's claim is not excepted from the Debtor's discharge under §523(a)(2)(A) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The debt claimed by the Plaintiff, Frances R. Bernacchi, against the Debtors, Thomas A. Cascio and Linda L. Steigman, is not excepted from the Debtors' Chapter 7 discharge pursuant to §523(a)(2)(A) of the Bankruptcy Code.

2. A separate Final Judgment will be entered in this adversary proceeding in favor of the Debtors, Thomas A. Cascio and Linda L. Steigman, and against the Plaintiff, Frances R. Bernacchi.

DATED this 4th day of April, 2017.

**BY THE COURT**

PAUL M. GLENN
United States Bankruptcy Judge